ROBIN BODENHAMER,

     Plaintiff,

                                Case No.: 8:25-cv-01859-SDM-NHA

     v.

BAY FOOD BROKERAGE, INC.,
CHRISTOPHER GEORGE LIND,
EOS HOSPITALITY LLC, and HARRIS
TEETER, LLC,

     Defendants.

_____/

## AMENDED COMPLAINT

Plaintiff, Robin Bodenhamer ("Plaintiff Bodenhamer" or "Plaintiff"), by and through the undersigned counsel, brings this Amended Complaint against Defendants, Bay Food Brokerage, Inc. ("Defendant Bay Food"), Christopher George Lind ("Defendant Lind"), EOS Hospitality LLC ("Defendant EOS"), and Harris Teeter, LLC ("Defendant Harris Teeter"), and alleges as follows:

## PRELIMINARY STATEMENT

1. This is an employment discrimination and civil rights action brought by Plaintiff, Robin Bodenhamer, against her former employer, Defendant Bay Food Brokerage, Inc., related to torts committed against her by Defendant Christopher George Lind, and Defendants Harris Teeter, LLC, and EOS Hospitality LLC, for the physical, psychological, and economic harms she

suffered as a result of a violent sexual assault committed by Defendant Lind at a work-related conference held at Hilton Myrtle Beach Resort - Kingston Plantation ("Hilton Myrtle Beach"), and the subsequent discriminatory, retaliatory, and negligent treatment by Defendant Bay Food.

2.      Defendant Bay Food's discrimination against Plaintiff Bodenhamer would not have occurred but for Defendant Lind's sexual assault upon her. Due to the egregious negligence of Defendants Harris Teeter and EOS, Defendant Lind was able to perpetrate the sexual assault on Plaintiff Bodenhamer while both were acting in their capacity as employees attending the work conference at the Hilton Myrtle Beach.

3.      Plaintiff Bodenhamer's subsequent disability resulting directly from the events that unfolded at the Hilton Myrtle Beach led to Defendant Bay Food's discriminatory treatment of her and ultimate retaliatory termination.

4.      This action arises under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12112 and 12203; the Florida Civil Rights Act, Fla. Stat. §§ 760.01–760.22; and the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq.

5.      On or about July 16–17, 2023, during the Carolinas Food Industry Council ("CFIC") Convention held at Hilton Myrtle Beach, managed by Defendant EOS, Plaintiff Bodenhamer was sexually assaulted and raped by Defendant Lind, who was acting within the course and scope of his employment as a Category Manager for Defendant Harris Teeter.

6.     Plaintiff Bodenhamer seeks redress for Defendant Bay Food's negligence in sending her to the CFIC Convention where she was attacked, and subsequent refusal to reasonably accommodate her documented disabilities following the sexual assault, including post-traumatic stress disorder ("PTSD") and traumatic brain injury ("TBI"), and for its acts of retaliation, surveillance, constructive discharge, and mismanagement of her leave rights and benefits.

7.     Plaintiff Bodenhamer also seeks compensatory and punitive damages against Defendant EOS as well as Defendants Bay Food and Harris Teeter for their grossly negligent acts and omissions in failing to ensure a safe and secure environment at the 19th Annual CFIC Convention, and for Defendant Harris Teeter's failure to supervise and restrain the unlawful conduct of its employee, Defendant Lind.

8.     The collective failures of Defendants EOS, Bay Food, and Harris Teeter, directly contributed to Defendant Lind's assault on Plaintiff Bodenhamer, as the assault would never have occurred but for the negligence of the corporate defendants.

9.     Multiple eyewitnesses, including other Convention participants, Hilton Myrtle Beach guests, and staff, observed Defendant Lind persistently harassing and physically groping Plaintiff Bodenhamer throughout the evening.

10. Despite reports to Hilton Myrtle Beach staff that Plaintiff Bodenhamer was being dragged through the lobby in an impaired and distressed condition, hotel personnel failed to intervene or provide protection.

11. The assault and battery culminated in the women's restroom, where Defendant Lind raped Plaintiff Bodenhamer while Hilton Myrtle Beach staff stood outside the restroom and failed to act.

12. Following the assault and battery, Plaintiff Bodenhamer was hospitalized.

13. Plaintiff was diagnosed with a concussion, and later diagnosed with PTSD.

14. Plaintiff's trauma occurred during the course of her employment while attending a work-related function.

15. Plaintiff was raped by the employee of a Bay Food client with whom she worked in her capacity as a Bay Food employee.

16. Despite this, Defendant Bay Food repeatedly denied Plaintiff Bodenhamer's reasonable requests for workplace accommodations, including reassignment from the Harris Teeter account and reduced hours to manage her treatment.

17. Defendant Bay Food not only refused these accommodations, but retaliated by threatening compensation cuts, increasing her workload, monitoring her computer activity, fabricating pretextual disciplinary write-ups, and creating

shifting documentation standards that delayed her short-term disability and leave processes.

18.     Defendant Bay Food ultimately claimed that Plaintiff Bodenhamer "voluntarily resigned" despite her ongoing communications regarding return-to-work requirements and her physician's outstanding need for a current job description.

19.     Plaintiff Bodenhamer's professional and personal life has been irreparably impacted by Defendants' collective acts, omissions, and misconduct.

20.     Plaintiff has suffered financial hardship, severe emotional distress, humiliation, medical complications, and long-term psychological trauma.

21.     The conduct of each and every Defendant was knowing, intentional, and in reckless disregard of Plaintiff Bodenhamer's rights under federal and applicable state laws.

22.     The failures of Defendants EOS, Harris Teeter, and Bay Food enabled Defendant Lind to commit a violent assault on Plaintiff Bodenhamer, and Defendant Bay Food compounded Plaintiff's injuries, harm, and suffering by discriminating against Plaintiff once her disability arose.

23.     Plaintiff Bodenhamer now seeks all remedies available under the ADA, FMLA, FCRA, and relevant common law, including but not limited to compensatory damages, punitive damages, attorneys' fees, injunctive relief, and any further relief this Court deems just and proper.

## THE PARTIES

24.     Plaintiff, Robin Bodenhamer, is a citizen of the United States and a resident of Forsyth County, North Carolina.

25.     At all times material hereto, Plaintiff was employed by Defendant Bay Food as an Account Executive (Sales) from approximately May 2022 until her constructive termination on or about July 24, 2024.

26.     Plaintiff is a qualified individual with a disability under the Americans with Disabilities Act and the Florida Civil Rights Act.

27.     Defendant Bay Food is a Florida corporation with its principal place of business located at 5111 Memorial Highway, Tampa, Florida 33634.

28.     At all relevant times, Defendant Bay Food employed more than fifteen (15) employees and was an "employer" within the meaning of the ADA, the FCRA, and the FMLA.

29.     Defendant EOS operates and manages the Hilton Myrtle Beach, located at 10000 Beach Club Drive, Myrtle Beach, South Carolina 29572.

30.     Defendant EOS is a limited liability company with its principal place of business located at 444 Madison Avenue, 14th Floor, New York, New York 10022.

31.     The Hilton Myrtle Beach is a hotel, resort, and conference facility, under the Hilton Hotels & Resorts brand.

32.     Defendant Harris Teeter is a North Carolina limited liability company with its principal place of business at 701 Crestdale Road, Matthews, North Carolina 28105.

33.     At all relevant times, Defendant Harris Teeter operated a regional grocery chain and employed Defendant Lind in a managerial capacity.

34.     Defendant Lind is an individual residing, upon information and belief, in Union County, North Carolina.

35.     At all relevant times, Defendant Lind was employed by Defendant Harris Teeter as a Category Manager and attended the 2023 CFIC Convention in that capacity.

## JURISDICTION AND VENUE

36.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions raised under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, et seq.

37.     This action is authorized and instituted pursuant to Title I of the ADA, which prohibits disability discrimination in employment.

38.     Plaintiff's claim for attorneys' fees and costs is conferred by the enforcement provisions of the ADA, 42 U.S.C. § 12205.

39.     The Court has supplemental jurisdiction over Plaintiff's related claims arising under state laws.

40.     The factual determinations required for Plaintiff Bodenhamer's federal ADA claims against Defendant Bay Food substantially overlap with the factual determinations required for her state-law tort claims against Defendants EOS, Harris Teeter, and Lind.

41.     Defendant Bay Food's discriminatory treatment of Plaintiff was inextricably linked to the trauma caused by Defendants Lind, EOS, and Harris Teeter, and the evidence necessary to prove each claim will involve the same witnesses, medical providers, and factual record. The ADA issues cannot be adjudicated without consideration of the very same events that give rise to Plaintiff's tort claims.

42.     Evidence of the assault and its psychological aftermath is central to establishing harm and damages for both state law claims against all Defendants and the federal law claims against Defendant Bay Food that flow directly from the impact of the assault on Plaintiff Bodenhamer.

43.     The same medical records, physician testimony, and mental health evidence will establish both the nature of Plaintiff's disability and the scope of her damages flowing from the assault.

44.     Testimony from Defendant Bay Food executives, managers, and human resources personnel will necessarily address their knowledge of Plaintiff's sexual assault at the Hilton Myrtle Beach Resort, their awareness of her resulting PTSD and medical limitations, and their response to her requests for

accommodation. This testimony is relevant both to proving Defendant Bay Food's ADA violations and to establishing the scope of damages that flow directly from the assault.

45.     Defendant Bay Food's treatment of Plaintiff following her return to work cannot be separated from the traumatic event that created her disability. Defendant Bay Food personnel will be required to testify about how the assault was communicated to them, how they assessed her disability in light of the assault, and how those facts informed their decisions regarding discipline, scheduling, and eventual termination.

46.     Thus, the same evidence concerning Defendant Bay Food's knowledge of the assault and its aftermath is probative of both (a) the negligence and culpability of the all the Defendants in proximately causing the assault, and Defendant Bay Food's subsequent discriminatory conduct under the ADA when it failed to accommodate or retaliated against Plaintiff because of that assault.

47.     Because Plaintiff's federal and state claims involve overlapping proof, common witnesses, and interdependent factual determinations, they arise from a common nucleus of operative fact such that Plaintiff would ordinarily be expected to try them all in one judicial proceeding.

48.     Furthermore, trying Plaintiff Bodenhamer's federal and state claims together in one proceeding will conserve judicial resources and avoid duplicative litigation.

49.    If the tort claims were severed and tried separately in another forum, multiple courts would be required to hear the same evidence regarding Plaintiff Bodenhamer's medical diagnoses, treatment, and limitations, and multiple juries would be asked to evaluate overlapping damages testimony.

50.    A single proceeding ensures consistent factual determinations on Plaintiff Bodenhamer's disability, causation, and damages, avoiding the risk of conflicting verdicts.

51.    Because Plaintiff Bodenhamer's ADA claims and state-law claims arise from the same continuous factual sequence and rely on many of the same witnesses and records, judicial economy and fairness strongly support exercising supplemental jurisdiction so all claims may be resolved in a unified trial.

52.    Hilton Myrtle Beach is operated and managed by Defendant EOS.

53.    The Court has personal jurisdiction over Defendant EOS pursuant to Florida Statute 48.193(2).

54.    Florida Statute 48.193(2) provides "a defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity."

55.    Defendant EOS's substantial and not isolated activity within this state includes:

a. Registering as a Foreign Limited Liability Company with the Florida Division of Corporations and Secretary of State;

b. Maintaining a Registered Agent in the State of Florida at 1201 Hays Street, Tallahassee, FL 32301-2525;

c. Owning and/or managing and/or operating at least ten (10) hotels and/or resort properties in the State of Florida.

56. Defendant EOS derives substantial and continuous revenue from its ownership, management, and operation of multiple hospitality and lodging properties in Florida, including resorts and hotels branded under national chains.

57. Defendant EOS maintains ongoing contractual and business relationships with Florida-based vendors, suppliers, and employees, and regularly conducts recruitment and marketing within Florida directed at Florida residents.

58. Defendant EOS's operations throughout Florida in managing multiple hotels in the forum and generating millions of dollars in revenue from those hotels are continuous, systematic, and substantial.

59. Defendant EOS's conduct in Florida is so substantial and of such a nature that Defendant EOS is essentially at home in Florida.

60. This Court also has specific jurisdiction over Defendant EOS under Fla. Stat. § 48.193(1) because EOS committed tortious acts outside Florida that

caused injury within Florida to Defendant Bay Food, a Florida corporation headquartered in this District.

61.     Defendant EOS undertook the operation and management of the Hilton Myrtle Beach Resort, where Plaintiff Bodenhamer, acting within the scope of her employment with Defendant Bay Food, was sexually assaulted.

62.     By failing to provide adequate safety, supervision, and security, Defendant EOS's negligence foreseeably injured Defendant Bay Food in Florida, because Defendant Bay Food lost the services, productivity, and continued employment of its Florida-based employee.

63.     The economic and operational harm suffered by Defendant Bay Food in Florida establishes the injury-in-forum nexus necessary for specific jurisdiction over Defendant EOS.

64.     This Court has personal jurisdiction over Defendant Harris Teeter under Fla. Stat. § 48.193(2).

65.     Defendant Harris Teeter operates a business location in Florida and is registered as a Foreign Limited Liability Company doing business in the State of Florida and has a registered agent address at 1201 Hays Street, Tallahassee, FL 32301-2525.

66.     Beyond its physical Florida store, Defendant Harris Teeter derives substantial, continuous revenue from Florida through its integrated grocery

distribution network, which includes regular shipments into Florida and sales relationships with Florida-based suppliers such as Defendant Bay Food.

67. Defendant Harris Teeter's executives and category managers, including Defendant Lind, routinely interacted with Bay Food employees located in Florida to negotiate pricing, contracts, and product placement.

68. Defendant Harris Teeter's ongoing Florida activities, including maintaining employees, operations, and business ventures here, render it subject to general personal jurisdiction under Fla. Stat. § 48.193(2).

69. Defendant Harris Teeter is furthermore a wholly-owned subsidiary of The Kroger Co. ("Kroger"). Kroger publicly describes Defendant Harris Teeter as one of its operating "banners," and lists Defendant Harris Teeter stores in its public financial filings and marketing materials as part of Kroger's unified enterprise.

70. Kroger acquired Defendant Harris Teeter in 2014 for approximately $2.5 billion. Since that acquisition, Defendant Harris Teeter has functioned as a division or brand within Kroger's nationwide grocery business, not as a genuinely independent corporate entity.

71. Defendant Harris Teeter's corporate governance and finances are dominated and controlled by Kroger. On information and belief, Defendant Harris Teeter's executive officers are appointed by Kroger, report directly to

Kroger management, and are required to implement Kroger's business strategies and policies without independent discretion.

72. Kroger integrates Defendant Harris Teeter fully into its supply chain, procurement, logistics, and IT infrastructure. For example, Kroger has publicly announced that it operates under "Kroger, Harris Teeter, and other banners" as a single national enterprise. Defendant Harris Teeter does not independently negotiate or manage its supply contracts, vendor agreements, or technological platforms; those decisions are made and controlled by Kroger.

73. Defendant Harris Teeter does not maintain separate financial statements made publicly available to investors. Its revenue, expenses, assets, and liabilities are commingled with those of Kroger and reported as Kroger's financial performance. On information and belief, Defendant Harris Teeter is not adequately capitalized for the scale of its operations, and Kroger directly funds and services its obligations.

74. Defendant Harris Teeter does not observe corporate formalities consistent with a truly independent entity. On information and belief, Defendant Harris Teeter and Kroger share common officers and directors, maintain overlapping bank accounts and insurance, and disregard separateness in decision-making.

75. Defendant Harris Teeter is marketed to consumers as part of Kroger's single family of grocery stores. Kroger directs the use of the Defendant Harris

Teeter's name and logo, and Defendant Harris Teeter's store operations are subject to Kroger's national marketing, loyalty programs, and advertising campaigns.

76.     Defendant Harris Teeter is therefore a mere instrumentality of Kroger, operated for Kroger's benefit and under Kroger's complete control. The two companies share a unity of interest such that Defendant Harris Teeter's separate corporate existence is a façade.

77.     Kroger conducts extensive and continuous operations in Florida, where it maintains numerous retail grocery locations and distribution channels under its banners, and derives substantial revenue from its Florida locations.

78.     Kroger's operations throughout Florida are so substantial and of such a nature that Kroger is essentially at home in Florida.

79.     Because Defendant Harris Teeter is Kroger's alter ego, Kroger's Florida contacts are properly imputed to Defendant Harris Teeter. Accordingly, Defendant Harris Teeter is likewise "at home" in Florida and subject to this Court's exercise of general jurisdiction under Fla. Stat. § 48.193(2) and the Due Process Clause.

80.     This Court also has specific jurisdiction over Defendant Harris Teeter under Fla. Stat. § 48.193(1) because Harris Teeter's acts and omissions outside Florida foreseeably caused injury to Defendant Bay Food within Florida.

81.     Defendant Harris Teeter, through its managerial employee Defendant Lind, maintained an ongoing commercial relationship with Defendant Bay Food, a Florida company headquartered in this District.

82.     Defendant Harris Teeter's negligent supervision and control of Defendant Lind during the Myrtle Beach conference directly enabled the assault on Plaintiff Bodenhamer while she was engaged in work duties. That assault foreseeably harmed Defendant Bay Food in Florida by depriving it of the services of a key employee, disrupting Defendant Bay Food's Florida-based operations, and causing financial and reputational injury to Defendant Bay Food. These Florida-centered injuries establish specific jurisdiction over Defendant Harris Teeter in this Court.

83.     This Court has personal jurisdiction over Defendant Christopher Lind pursuant to Florida's long-arm statute, Fla. Stat. § 48.193(2).

84.     Defendant Lind has submitted himself to the jurisdiction of this Court by engaging in substantial business activity with a Florida-based company, namely Defendant Bay Food.

85.     Defendant Lind was an employee of Defendant Harris Teeter at the time of the incident.

86.     At all relevant times, Defendant Lind acted as a managerial employee of Defendant Harris Teeter, conducting continuous and systematic business with Defendant Bay Food, a Florida-based company.

87.     In his position as Category Manager for Frozen Foods, Defendant Lind negotiated with and purchased items for Defendant Harris Teeter from Defendant Bay Food.

88.     Defendant Lind routinely communicated and worked with Bay Food executives and account representatives located in Tampa, Florida, and relied on Defendant Bay Food's Florida office for contract fulfillment and sales execution.

89.     Defendant Lind repeatedly engaged in contractual negotiations, purchasing decisions, and account management that were directed toward and coordinated with Defendant Bay Food's Florida operations. These business activities were regular, deliberate, and ongoing.

90.     Defendant Lind attended the CFIC Convention for purposes relating to his work with Defendant Bay Food, interacted with Plaintiff in her capacity as a Bay Food representative, and committed the rape within the scope of his employment.

91.     By engaging in continuous and systematic professional dealings with a Florida corporation as part of his official role, Lind purposefully availed himself of the benefits of conducting business in Florida such that he is subject to general jurisdiction under Fla. Stat. § 48.193(2).

92.     This Court also has specific jurisdiction over Defendant Lind under Fla. Stat. § 48.193(1) because his intentional tortious conduct in South Carolina

caused injury within Florida to Defendant Bay Food, Plaintiff's employer headquartered in this District.

93. At the time of the assault, Defendant Lind was acting as a managerial employee of Defendant Harris Teeter in connection with its Florida-directed business dealings with Defendant Bay Food.

94. Defendant Lind's assault upon Plaintiff foreseeably harmed Defendant Bay Food in Florida by depriving it of her services, causing disruption to Defendant Bay Food's Florida-based operations, and triggering employment-related obligations that arose in Tampa.

95. Because Defendant Lind's intentional misconduct foreseeably injured a Florida corporation, he is subject to the jurisdiction of this Court.

96. This Court has general jurisdiction over Defendant Bay Food pursuant to Fla. Stat. § 48.193(2) because Defendant Bay Food is a Florida corporation with its principal place of business located in Tampa, Florida, within this District.

97. Defendant Bay Food maintains continuous and systematic business operations here, including employing personnel, maintaining its corporate offices, and directing its brokerage business from this District.

98. Defendant Bay Food is therefore "at home" in Florida and subject to general personal jurisdiction in this Court.

99.     This Court also has specific jurisdiction over Defendant Bay Food pursuant to Fla. Stat. § 48.193(1) because the acts and omissions giving rise to Plaintiff's claims against it occurred in this District.

100.    Defendant Bay Food's executives, human resources personnel, and decisionmakers located in Tampa directed and controlled Plaintiff's employment, made the discriminatory and retaliatory decisions challenged in this action, and failed to provide training, policies, and supervision necessary to protect Plaintiff in connection with her employment.

101.    These Florida-based acts and omissions establish specific jurisdiction over Defendant Bay Food in this Court.

102.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

103.    A substantial part of the events and omissions giving rise to Plaintiff's tort claims occurred in this District as Plaintiff attended the Hilton Myrtle Beach conference solely because of her employment with Defendant Bay Food, which directed and authorized her attendance from its headquarters in Tampa, Florida, which is located in this District.

104.    Plaintiff Bodenhamer's employment with Defendant Bay Food was directed, supervised, and controlled from Defendant Bay Food's headquarters in Tampa.

105.    Defendant Bay Food failed to provide adequate training, policies, or supervision to protect Plaintiff from foreseeable risks at the conference, including after-hours events involving alcohol. These omissions occurred in this District, where Bay Food's executives and managers were located and from which Plaintiff's work assignments were directed.

106.    The tort claims against Defendants EOS, Harris Teeter, and Lind also arise in part from events and omissions occurring in this District.

107.    Defendants Harris Teeter and Lind maintained an ongoing business relationship with Defendant Bay Food, a Florida-based corporation, and communicated with Bay Food employees located in this District in the course of their business dealings.

108.    Defendant Lind's assault upon Plaintiff occurred during a professional conference arising directly out of that Florida-centered relationship.

109.    The adverse employment actions giving rise to Plaintiff's federal claims were made by Defendant Bay Food officials working in this District and are reflected in personnel and employment records maintained in this District.

110.    Because Plaintiff's attendance at the Hilton Myrtle Beach conference was compelled by her employment in Florida, because Defendant Bay Food's omissions in training and supervision occurred in Florida, and because Defendants' business interactions with Bay Food were directed into Florida, a

substantial part of the events or omissions giving rise to all claims occurred in this District.

111.   The claims are factually interdependent and arise from the same sequence of events, making the Middle District of Florida the proper venue for the entire action. Venue is also proper in this District pursuant to 42 U.S.C. § 2000e-5(f)(3) as Defendant Bay Food's unlawful employment practices as alleged herein were committed in this District and the relevant employment records are maintained and administered in this District.

112.  Defendant Bay Food's human resources personnel and decisionmakers responsible for the discriminatory and retaliatory conduct alleged are located in this District, where Defendant Bay Food is headquartered, and Plaintiff's employment records are administered and maintained here.

113.   Venue is also proper in this District pursuant to 28 U.S.C. § 1391(b)(3) because there is no other district in which this action may otherwise be brought, and the Court has personal jurisdiction over the Defendants.

114.   Defendant EOS is headquartered outside Florida, and Defendant Harris Teeter and Defendant Christopher Lind are located in North Carolina. The only District that provides a proper forum for the exercise of jurisdiction over all Defendants collectively is the Middle District of Florida.

115.	Litigating Plaintiff Bodenhamer's federal and state law claims together in this District will avoid the inefficiency of splitting this action across multiple jurisdictions.

116.	Plaintiff Bodenhamer's federal claims against Defendant Bay Food and her state law tort claims against the Defendants are factually and evidentially interconnected, and will require the same witnesses, medical records, and testimony regarding Plaintiff Bodenhamer's disability, damages, and treatment. If this action were divided among multiple courts, it would result in duplicative litigation, conflicting verdicts, and wasted judicial resources.

117.	The Middle District of Florida is also the most convenient forum for this action. Defendant Bay Food is headquartered in Tampa, Florida, within this District, and its executives, decisionmakers, and human resources personnel responsible for the discriminatory and retaliatory actions alleged are located here. Plaintiff's employment records and Defendant Bay Food's corporate files relevant to her ADA and FCRA claims are also maintained in this District.

118.	Because Plaintiff's federal and state claims involve overlapping proof, common witnesses, and interdependent factual determinations, it is efficient to try all claims in one proceeding in this District.

119.	No alternative forum would be more convenient for all parties. Defendant Lind resides in North Carolina; the corporate defendants are incorporated and headquartered outside South Carolina; and Plaintiff resides in

North Carolina. No single district outside Florida would have jurisdiction over all Defendants or provide access to all relevant witnesses and records.

120. Splitting the case between forums would create duplicative litigation, force multiple juries to hear overlapping testimony regarding Plaintiff's disability and damages, and risk inconsistent verdicts. In contrast, the Middle District of Florida can adjudicate all claims in a single proceeding, ensuring consistency and conserving judicial resources.

121. For these reasons, the balance of private and public interest factors supports maintaining venue in this District.

122. In addition, the claims asserted herein arise from a single integrated set of facts involving Plaintiff Bodenhamer's employment with Defendant Bay Food, her attendance at the Myrtle Beach conference, and the negligent and intentional conduct of the Defendants.

123. To the extent Defendant Bay Food asserts crossclaims against its co-defendants for indemnity, contribution, or related relief, this Court would exercise supplemental jurisdiction over those crossclaims under 28 U.S.C. § 1367 because they arise from the same nucleus of operative fact as Plaintiff's federal claims.

124. The likelihood of such crossclaims further demonstrates that all claims and parties should be adjudicated together in this forum to avoid

piecemeal litigation, inconsistent rulings, and duplication of judicial and party resources.

## PROCEDURAL REQUIREMENTS

125.    On or about May 1, 2024, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") in Tampa, Florida. The charge was dual-filed with the Florida Commission on Human Relations ("FCHR") pursuant to the work-sharing agreement between the agencies.

126.    Plaintiff filed the charge within 300 days of the occurrence of the alleged unlawful employment practices, including disability discrimination and retaliation, in violation of the ADA and the FCRA.

127.    On or about June 6, 2025, the EEOC issued Plaintiff a Notice of Right to Sue. Plaintiff is filing this Complaint within ninety (90) days of receiving the Notice of Right to Sue.

128.    All conditions precedent to the institution of this action have been fulfilled, satisfied, or otherwise waived.

## FACTUAL ALLEGATIONS

### Plaintiff's Employment with Bay Food

129.     Plaintiff was hired by Defendant Bay Food in or around May 2022 as an Account Executive (Sales).

130.     Defendant Bay Food is a Florida-based food brokerage firm that represents food manufacturers in promoting and placing products within regional and national grocery chains across the southeastern United States.

131.     In her role, Plaintiff Bodenhamer reported to Gary Royal, Defendant Bay Food's Vice President of Sales, and worked at the direction of Chris Chatterton, and later Tiffany Vassallo, Defendant Bay Food's Director of Human Resources and Operations.

132.     Plaintiff Bodenhamer's responsibilities included maintaining communications between manufacturers and retailers, attending industry events and showcases, developing strategic marketing presentations, and managing key retail accounts, including Defendant Harris Teeter.

133.     Defendant Harris Teeter is a regional grocery chain and longstanding client of Defendant Bay Food.

134.     At all relevant times, Defendant Harris Teeter employed Defendant Lind as a Category Manager.

135.     Defendant Lind was the primary point of contact for all frozen products categories on which Plaintiff Bodenhamer worked.

136.     Plaintiff Bodenhamer was assigned to the Harris Teeter account and was required to interact with Defendant Lind as part of her job responsibilities.

## CFIC Convention and Assault by Defendant Lind

137.     On or about July 16–17, 2023, Plaintiff Bodenhamer attended the 19th Annual Carolinas Food Industry Council Convention held at the Hilton Myrtle Beach Resort - Kingston Plantation in Myrtle Beach, South Carolina.

138.     Plaintiff attended in her capacity as an Account Executive for Defendant Bay Food, where she was responsible for engaging with retail clients and showcasing represented products.

139.     Plaintiff attended the CFIC Convention at the direction of Defendant Bay Food.

140.     At the time of the CFIC Convention, Plaintiff managed the Harris Teeter account as part of her job responsibilities as an Account Executive.

141.     Defendant Lind was also present at the Convention in his professional capacity and as a representative of Defendant Harris Teeter.

142.     Plaintiff and Defendant Lind interacted with one another at the Convention as part of their respective job responsibilities.

143.     Throughout the evening of July 16, 2023, Defendant Lind persistently harassed Plaintiff Bodenhamer in public areas of the resort, including the hotel bar and surrounding lobby.

144. Despite Plaintiff's clear signs of impairment and visible discomfort, Defendant Lind continued to make sexually inappropriate comments and touch her without consent.

145. Defendant Lind repeatedly groped Plaintiff at the hotel bar in plain view of Hilton Myrtle Beach staff and other guests up until around 12:50AM on July 17, 2023.

146. Plaintiff was visibly disoriented, intoxicated, and unable to meaningfully respond to Defendant Lind's advances.

147. Hilton Myrtle Beach staff observed these interactions but failed to intervene.

148. Shortly thereafter, a group of high school and college-aged students observed Defendant Lind forcibly dragging Plaintiff through the Hilton lobby, while she was still visibly intoxicated, unable to walk on her own, and attempting to escape his grasp.

149. Defendant Lind held Plaintiff upright in his grasp and guided her while taking her unwillingly across the lobby in full view of Hilton's front desk personnel.

150. Alarmed by Plaintiff's condition and the inappropriate nature of Defendant Lind's conduct, the students first approached both Defendant Lind and Plaintiff to ask if she needed help.

151.    Plaintiff did not respond, appeared visibly incapacitated, and gave no indication that she was aware of her surroundings.

152.    Defendant Lind responded on her behalf, stating that they were fine and did not need assistance.

153.    The students, unconvinced, continued to observe as Defendant Lind continued dragging Plaintiff further through the lobby and into a women's restroom.

154.    Deeply concerned for Plaintiff's safety, the students immediately alerted Hilton Myrtle Beach security.

155.    Despite this urgent report from multiple witnesses, Hilton Myrtle Beach staff failed to timely respond and investigate the situation unfolding.

156.    After their initial report to Hilton Myrtle Beach staff went unanswered, the students went to the women's restroom out of growing concern for Plaintiff's safety.

157.    Upon cautiously opening the restroom door, the witnesses observed Defendant Lind's naked buttocks and immediately recognized that he was engaged in sexual intercourse with Plaintiff.

158.    They observed that Plaintiff was limp, unresponsive, and visibly incapacitated.

159. Therefore, they returned to the front desk to again notify Hilton Myrtle Beach security of the escalated situation, as security had still not responded to their prior report in any manner.

160. Hilton's night manager, Richard Graham, failed to respond personally to the initial security report from concerned witnesses regarding Plaintiff's condition and Defendant Lind's conduct.

161. Instead of responding himself, Mr. Graham directed night auditor Paul Todd to assess the report.

162. Mr. Todd ultimately responded to the students' reports by briefly entering the women's restroom, where he encountered Defendant Lind standing over Plaintiff Bodenhamer, who was semi-conscious, undressed, and lying on the floor.

163. Rather than treat the incident as a medical emergency or assault, Mr. Todd simply asked if everything was "okay."

164. When Defendant Lind responded affirmatively, Mr. Todd merely exited and returned to the front desk, where he reported his findings to Mr. Graham and recommended that Defendant Lind be removed.

165. Defendant Lind, in the meantime, continued to rape Plaintiff Bodenhamer.

166. Mr. Graham then went to the women's restroom and knocked on the door, announced himself as security, and observed Plaintiff lying on the floor while Mr. Lind attempted to lift her.

167. Rather than intervening or assessing Plaintiff's condition, Mr. Graham simply asked if everything was okay and accepted an incoherent response from Plaintiff.

168. At approximately 1:15 AM, Hilton Myrtle Beach staff waited idly outside the women's restroom as Defendant Lind dressed himself and Plaintiff, who had just been raped, and escorted her out of the restroom.

169. The Hilton Myrtle Beach staff waiting outside the restroom observed the pair leaving but made no effort to intervene, assist Plaintiff, or notify emergency responders.

170. Only after this prolonged period of neglect did Mr. Graham finally call the police.

171. However, by that point, Defendant Lind had already taken Plaintiff to the fourth floor and attempted to bring her into a hotel room that was neither his nor hers.

172. The students, meanwhile, ascertained what floor Defendant Lind had taken Plaintiff to, ran up the stairs, and observed Defendant Lind fondling Plaintiff as he was trying to drag her through the fourth floor hallway.

173.   The students also observed Plaintiff fall face down on the ground while Defendant Lind was touching and digitally penetrating her.

174.   Shortly thereafter, Hilton Myrtle Beach security finally intercepted Defendant Lind at that time, but only after he had already completed his assault, publicly dragged a semi-conscious victim through their property, and been allowed to exit a women's restroom in full view of staff without challenge or intervention.

175.   The damage was not only done—it was enabled.

### Immediate Medical Response and Ongoing Trauma

176.   Plaintiff was transported by emergency personnel to Grand Strand Regional Medical Center following the assault.

177.   Emergency personnel that transported her surmised that she may have been drugged, not merely intoxicated.

178.   Plaintiff was diagnosed with a concussion, and physical trauma consistent with non-consensual sexual contact.

179.   Medical staff noted Plaintiff's disorientation, memory loss, and distress, and referred her for emergency psychological evaluation.

180.   She was subsequently diagnosed with post-traumatic stress disorder (PTSD), alongside symptoms of traumatic brain injury (TBI), including cognitive dysfunction, intrusive flashbacks, and emotional dysregulation.

181. These diagnoses have required ongoing therapeutic treatment and have significantly impaired Plaintiff's personal well-being, her capacity to work, and her ability to carry out routine daily functions.

182. Plaintiff's physical and mental health have been permanently affected as a result of the assault and the negligent and reckless actions of each Defendant.

## Defendant Lind's Predatory and Criminal Conduct

183. Defendant Lind did not act impulsively, recklessly, or negligently—he acted with opportunism and malicious intent in his professional capacity while attending a work-related function.

184. His conduct was deliberate, predatory, and fully informed by the professional setting in which it occurred and the vulnerability of his victim, who was obligated to interact with him as a professional colleague.

185. Rather than upholding even the minimum standards of professional or human decency, Defendant Lind exploited the blurred lines of a business hospitality event to isolate and dominate Plaintiff.

186. He observed her intoxication, perhaps even facilitated it, knew or should have known she was physically and cognitively impaired, and yet made the conscious decision to repeatedly and publicly harass and grope her before physically dragging her into a secluded location within the Hilton Myrtle Beach premises.

187.    There, he forcibly and non-consensually engaged in sexual conduct with a woman who was fully incapacitated—unable to speak intelligibly, walk unassisted, or assert bodily autonomy.

188.    This conduct constitutes actionable civil assault and sexual battery, false imprisonment, and intentional infliction of emotional distress under applicable tort law.

189.    It was carried out with the intent to violate Plaintiff's bodily autonomy and personal dignity, under circumstances in which Plaintiff was visibly impaired and dependent on those around her—including Defendant Lind—for her protection.

190.    Rather than render aid, Defendant Lind exploited her vulnerability and committed a non-consensual sexual act that caused immediate trauma and lasting psychological injury.

191.    Moreover, Defendant Lind's acts occurred under color of professional engagement, during a corporate-sponsored function where his presence and access were authorized by his employer.

192.    He used this professional setting as both a shield and a sword—shielding himself from scrutiny by appearing to act within social expectations, and weaponizing the event's informality and alcohol service to lower Plaintiff's defenses.

193.   The harm he inflicted on Plaintiff was not incidental or collateral—it was devastating and direct.

194.   Plaintiff suffered not only immediate physical trauma, but deep psychological wounds that led to a clinical diagnosis of post-traumatic stress disorder, significant impairment of her occupational functioning, and long-term emotional injury.

195.   Defendant Lind's conduct was intentional, malicious, and outrageous by any standard of human behavior or legal redress.

196.   His actions demand accountability—not only as a matter of civil liability, but as a predicate for punitive damages and exemplary relief designed to deter such abuses of power in professional settings.

### Defendant EOS's Failure to Protect and Intervene

197.   The staff at Hilton Myrtle Beach, acting as agents of Defendant EOS, the operator and manager of the hotel, completely failed Plaintiff.

198.   On the night of the rape, Defendant EOS was not only negligent but deliberately indifferent to a guest's obvious and escalating danger.

199.   Despite repeated and credible reports from bystanders—including high school and college-aged students—that Plaintiff was being dragged across the lobby in an intoxicated, distressed state by an adult male, Hilton Myrtle Beach staff failed to initiate any protective response.

200.   These warnings were clear and immediate, yet were dismissed without investigation.

201.   Hilton Myrtle Beach employees observed Defendant Lind groping Plaintiff at the hotel bar while she appeared visibly disoriented and unable to stand.

202.   They then watched him lead her across the resort's public areas, including the lobby, visibly holding her up and preventing her from escaping his grasp.

203.   At no point did any employee question or stop this conduct.

204.   When those same student witnesses reported hearing disturbing noises from the women's restroom—where Defendant Lind had forcibly taken Plaintiff—Hilton Myrtle Beach employees again failed to act.

205.   The night auditor, Paul Todd, entered the restroom, observed Defendant Lind standing over Plaintiff, who was half-naked, semi-conscious, and lying on the floor.

206.   Rather than treating this as the emergency it clearly was, Mr. Todd left without intervening or seeking help.

207.   Night manager Richard Graham later opened the restroom door, saw Plaintiff incapacitated while Defendant Lind attempted to dress her, and accepted an incoherent response as sufficient.

208.   He too walked away, leaving Plaintiff in the hands of her rapist.

209.   Staff stood idly outside the restroom, as Defendant Lind dressed Plaintiff and led her away, without making any effort to stop them or summon help.

210.   Only after this egregious chain of failures, which allowed a sexual assault to occur, did Hilton Myrtle Beach staff finally contact police.

211.   Their belated call was not motivated by urgency or duty, but by optics, after it was clear they had allowed a guest to be raped on their watch.

212.   Hilton Myrtle Beach staff observed multiple red flags, including, but not limited to:

   a.  Plaintiff's visibly impaired condition;

   b.  Defendant Lind's inappropriate groping in public view;

   c.  The dragging of a semi-conscious Plaintiff through the lobby;

   d.  Reports of distress and potential assault from student witnesses; and

   e.  Defendant Lind inside the women's restroom over Plaintiff's prone body.

213.   Hilton Myrtle Beach staff enabled a predator as their inaction emboldened Defendant Lind, prolonged Plaintiff's suffering, and denied her timely medical care and basic human dignity.

214.   This was not an unfortunate lapse in judgment but rather systemic failure and reckless disregard, in violation of every duty Defendants EOS and Hilton owed to their guest.

**Defendant Harris Teeter's Corporate Responsibility and Failure to Supervise**

215. Defendant Harris Teeter is a regional grocery chain and a key client of Defendant Bay Food.

216. At all times material, Defendant Harris Teeter employed Defendant Lind as a Category Manager, responsible for managing product categories in which Plaintiff Bodenhamer worked as a sales executive.

217. Defendant Harris Teeter placed Defendant Lind in a position of authority and influence over third-party vendors and partners, including Plaintiff, who was assigned to manage the Harris Teeter account on behalf of Defendant Bay Food.

218. Defendant Lind regularly interacted with Plaintiff in a professional capacity and was a point of contact on one of her largest accounts.

219. Defendant Lind attended the CFIC Convention as a designated representative of Defendant Harris Teeter.

220. Defendant Lind interacted with Plaintiff at the CFIC Convention on behalf of Defendant Harris Teeter and in his capacity as its representative.

221. The Convention was an industry event where vendors and clients, including Plaintiff and Defendant Lind, were expected to interact in furtherance of their respective companies' business relationships.

222.    At that Convention, while visibly intoxicated and incapacitated, Plaintiff was sexually assaulted by Defendant Lind on the Hilton Myrtle Beach premises.

223.    Upon information and belief, Defendant Harris Teeter, upon learning of this incident, took no steps to investigate, discipline, suspend, or restrict Defendant Lind's professional authority.

224.    There is no indication that Defendant Harris Teeter offered assistance, support, or accommodations, despite being fully aware that one of its employees had inflicted severe harm on a professional partner at a business event.

225.    Plaintiff was expected to continue her duties involving Defendant Harris Teeter, including managing the Harris Teeter account.

226.    This sustained exposure caused further psychological harm, including worsening of Plaintiff's PTSD symptoms, and directly contributed to her later disability leave and constructive termination.

227.    Defendant Harris Teeter's failure to supervise its employee, and its refusal to take corrective action once informed of the misconduct, constitutes negligent supervision under applicable state law.

228.    Defendant Harris Teeter owed a duty of care, not only to its own employees, but also to third-party professionals with whom it conducted regular business, to not as a pattern of practice employ sexual predators.

229. Moreover, by maintaining Defendant Lind in his role, without restriction or condemnation, Defendant Harris Teeter ratified his conduct.

230. Defendant Harris Teeter's omissions were not merely negligent—they were callous and deliberate, reflecting a corporate culture indifferent to the safety, dignity, and emotional well-being of its partners.

### Defendant Bay Food's Responsibility and Subsequent Retaliatory Conduct and Failure to Accommodate

231. At all times material, Defendant Bay Food owed a duty of care to Plaintiff and was responsible for ensuring her safety as its employee while she attended work-related events such as the CFIC Convention.

232. Defendant Bay Food knew or should have known that risks, including sexual assault, were reasonably foreseeable at industry events that it required its employees to attend and where it encouraged its sales representatives to engage in nighttime social activities including alcohol consumption.

233. Defendant Bay Food was aware that such events, including the CFIC Convention often involved interactions with clients and co-workers in informal settings, heightening the risk of inappropriate conduct.

234. Defendant Bay Food nonetheless failed to ensure the safety of its employees, including Plaintiff, at the CFIC Convention.

235. Plaintiff, while attending the CFIC Convention within the course of her employment, was sexually assaulted by a professional colleague with whom

she had a working relationship only by reason of her employment with Defendant Bay Food.

236. Plaintiff was raped by the employee of a Defendant Bay Food client.

237. Following the traumatic assault at the CFIC Convention, Plaintiff Bodenhamer's mental and physical condition deteriorated significantly. She was later diagnosed with PTSD and related trauma impairments.

238. Plaintiff Bodenhamer continued working for Defendant Bay Food while navigating debilitating trauma symptoms.

239. She repeatedly communicated to Defendant Bay Food's leadership—specifically Gary Royal, Vice President of Sales, and Chris Chatterton, Cammy Chatterton, and later Tiffany Vassallo—that she could not work on the Harris Teeter account due to the traumatic association with Defendant Lind.

240. On multiple occasions, Plaintiff explicitly requested to be removed from the Harris Teeter account and sought a reduction in workload as a reasonable accommodation for her disability.

241. Despite this, Defendant Bay Food continued assigning her responsibilities relating to Harris Teeter, causing recurring anxiety and emotional distress.

242. On or about December 20, 2023, Defendant Bay Food issued Plaintiff Bodenhamer a pretextual negative performance review.

243. The review, captured via a recorded meeting, failed to reflect the context of her ongoing trauma-related impairments or her reasonable requests to accommodate those impairments.

244. On December 26, 2023, Gary Royal, Vice President of Sales, pretextually accused Plaintiff of violating company policy by saving business-related communications to her personal Gmail account.

245. Plaintiff responded that this practice had been known and observed since her onboarding, including usage of her external hard drive in front of company personnel.

246. Plaintiff also cited specific instances, including March 2023, prior to the rape, when her computer malfunctioned and she was commended for backing up data externally. She also provided a May 2, 2023 email to Mr. Royal, outlining her process for transferring files using WeTransfer and Google Cloud.

247. On January 31, 2024, Tiffany Vassallo, Director of HR, emailed Plaintiff about ActivTrak data showing reduced work hours, another pretextual accusation.

248. Plaintiff replied on the same day, questioning the software's accuracy and noting that face-to-face client meetings, a critical part of her job, were not captured by ActivTrak.

249. Plaintiff again reiterated her inability to handle the Harris Teeter account and request for accommodation.

250. On February 28, 2024, Ms. Vassallo sent a follow-up email continuing to criticize Plaintiff's ActivTrak data.

251. On March 14, 2024, Plaintiff formally refused to sign her performance review, challenging its fairness and omission of her medical condition.

252. From March 18–20, 2024, Plaintiff attempted to participate in a Showcase and Summit with Harris Teeter representatives, as her employer demanded, but suffered a panic attack.

253. She immediately consulted her therapist, who advised her to withdraw, and her physician later directed her to pursue short-term disability.

254. Plaintiff continued to work remotely the remaining days and notified her colleague to cover for her at the summit.

255. At the summit, Plaintiff's colleague learned and relayed that representatives of Defendant Harris Teeter were instructed not to communicate with Plaintiff, exacerbating her workplace distress.

256. On March 25, 2024, Plaintiff requested access to her benefits documentation.

257. That same day, Mr. Royal pretextually accused her of losing a client contract and issued a disciplinary write-up.

258. Plaintiff immediately rebutted the allegations with multiple forms of documentation.

259.    Plaintiff provided contemporaneous emails and text messages from that client confirming its transition to a national broker was unrelated to Plaintiff's conduct.

260.    She also submitted her ActivTrak logs to prove that she had worked on both days in question.

261.    In response, Defendant Bay Food issued a revised version of the pretextual disciplinary write-up, only removing the allegation about losing the Bachan account.

262.    However, the company retained the pretext of "Job Performance" as the justification for discipline, citing her summit absence "impacted her performance."

263.    Plaintiff was pressured to sign the revised write-up, and did so under protest.

264.    On March 29, 2024, Plaintiff applied for short-term disability and requested leave.

265.    From April 1–3, 2024, she took paid time off.

266.    On April 2, 2024, Defendant Bay Food sent her FMLA paperwork, although she had only requested short-term disability.

267.    On April 4, 2024, Plaintiff reiterated she had not requested FMLA and asked again for clear procedures for short-term disability.

268. On April 9, 2024, Plaintiff met with Defendant Bay Food's HR via Microsoft Teams and was told she must continue working until her FMLA was officially approved.

269. On April 14, 2024, she submitted her FMLA certification forms.

270. On April 16, 2024, Defendant Bay Food granted a conditional leave of absence through April 30th, stating she must return by May 1st unless her FMLA was approved.

271. Plaintiff reasonably believes that Defendant Bay Food was using the FMLA process to delay or deny her short-term disability claim.

272. On April 18, 2024, Defendant Bay Food confirmed its approval of her FMLA leave, making it effective as of that day.

273. On May 21, 2024, Plaintiff received formal notice that her short-term disability application had been denied.

274. On May 22, 2024, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (the "EEOC") against Defendant Bay Food related to its violations of the ADA and the FMLA in the aftermath of her rape.

275. During Plaintiff's FMLA leave, she was in significant emotional and financial distress, experiencing difficulty paying for basic expenses, including the continuation of her therapy appointments necessary for her PTSD treatment.

276. On July 12, 2024, Defendant Bay Food sent Plaintiff a letter referencing her FMLA return-to-work date.

277. Prior to receiving the letter, Defendant Bay Food had never conveyed to Plaintiff the date on which they expected her to return.

278. The letter claimed that Plaintiff had failed to return to work on July 12, 2024, and warned that if she did not return by July 16, 2024, the company would treat her continued absence as a voluntary resignation under its Attendance Policy.

279. The letter was a clear pretextual attempt to disguise Defendant Bay Food's escalating retaliatory tactics against Plaintiff following the Charge of Discrimination she submitted to the EEOC.

280. Plaintiff had not yet been medically cleared to return to work when she received the July 12 letter.

281. Plaintiff's treating physician had in fact made requests to Defendant Bay Food to provide an accurate and updated job description required to complete the Fitness for Duty form required for her return.

282. On July 17, 2024, Plaintiff followed up with additional questions from her physician, indicating that more clarity was needed before he could safely authorize her return.

283. Despite this, on July 23, 2024, Ms. Vassallo emailed and mailed Plaintiff a letter asserting that her Fitness for Duty form had been due prior to July 12, 2024, implying noncompliance.

284. Plaintiff responded that Defendant Bay Food had only provided the job description after she had repeatedly requested it, and that it remained vague and inadequate for medical certification.

285. Despite Plaintiff's timely communications and attempts to comply, Bay Food treated her absence as unauthorized, and on or about July 24, 2024, Plaintiff was formally terminated.

286. Plaintiff's termination for failure to return to work after FMLA leave was clear pretext for retaliatory termination.

**EEOC Charge of Discrimination and Administrative Exhaustion**

287. On May 22, 2024, Plaintiff Bodenhamer filed a Charge of Discrimination with the EEOC against Defendant Bay Food, stating violations of the ADA and the FMLA.

288. In her charge, Plaintiff asserted that Defendant Bay Food engaged in unlawful employment practices by discriminating against her based on her disability, failing to provide reasonable accommodations, and retaliating against her for requesting protected medical leave.

289. Plaintiff's EEOC Charge arose directly from and incorporated the same operative facts set forth in this Complaint, including but not limited to:

a. Defendant Bay Food's refusal to accommodate Plaintiff's PTSD-related restrictions following a work-related sexual assault;

b. The imposition of negative performance reviews and electronic surveillance after Plaintiff objected to working with the client linked to her trauma; and

c. The denial or interference with Plaintiff's attempts to access short-term disability leave and medical accommodations.

290. Once Plaintiff was constructively discharged in July 2024 due to Defendant Bay Food's use of ambiguous return-to-work requirements and retroactive deadlines, Plaintiff informed the EEOC of the retaliatory termination that arose under pretextual and coercive circumstances.

291. Plaintiff filed the charge within the required statutory time limits, and the claims stated therein were timely and properly preserved.

292. On or about June 6, 2025, the EEOC issued a Notice of Right to Sue to Plaintiff Bodenhamer, thereby completing all administrative prerequisites for filing this civil action under the ADA and FMLA.

## Scope of Harm to Plaintiff

293. Plaintiff's experience reflects a disturbing and multifaceted failure of responsibility across the corporate and individual Defendants named herein.

294. What began as a routine professional appearance at an industry hospitality event devolved into a harrowing assault and months of retaliatory

mistreatment stemming and resulting directly from the events of that event—all enabled by the deliberate indifference, neglect, and misconduct of those in positions of trust.

295.     Defendant Lind's predatory and criminal acts, carried out in a professional setting within the scope of his employment with Defendant Harris Teeter, and against an incapacitated victim, inflicted lasting trauma.

296.     Hilton Myrtle Beach staff had multiple, visible opportunities to intervene, protect Plaintiff, or alert authorities—and failed at every turn, reflecting Defendant EOS's negligence.

297.     Defendant Harris Teeter's personnel knowingly placed a vulnerable employee in proximity to her assailant and then cut off her professional communications based on that same traumatic history.

298.     Defendant Bay Food, rather than accommodate or support its employee, systematically monitored, penalized, and ultimately pushed her out under the guise of policy enforcement.

299.     Each Defendant's conduct, whether through action or omission, contributed to Plaintiff's harm. Their collective indifference to her safety, autonomy, and lawful rights demands accountability under federal and state law. Plaintiff now seeks redress for the grave violations she endured.

## COUNT I - SEXUAL BATTERY
### (Against Defendants Christoper Lind and Harris Teeter)

300.    Plaintiff reincorporates and realleges all allegations in paragraphs 1-196, 215-226, 293-295, 297, and 299 above as if fully set forth herein.

301.    At all relevant times, Plaintiff and Defendant Lind were present at the CFIC Convention in their professional capacities.

302.    Defendant Lind interacted with Plaintiff throughout the Convention within the scope of his employment with Defendant Harris Teeter and in furtherance of his duties to his employer.

303.    During the course of the Convention, Defendant Lind intentionally isolated Plaintiff, who was visibly impaired due to alcohol consumption, and led her into a secluded restroom area.

304.    While Plaintiff was in a physically helpless and impaired condition, and unable to consent or resist, Defendant Lind engaged in non-consensual sexual contact with her, including genital contact and penetration.

305.    Plaintiff did not consent to the physical contact.

306.    The acts Defendant Lind committed were intentional and offensive, without Plaintiff's knowing, intelligent, or voluntary agreement.

307.    Defendant Lind inflicted unlawful violence on Plaintiff without her consent.

308. Moreover, Defendant Lind exploited the context of a professional event to isolate Plaintiff and carry out the assault, thereby compounding her vulnerability and intensifying the coercive nature of the encounter.

309. Defendant Lind took the above-described actions within the scope of his employment with Defendant Harris Teeter.

310. Defendant Lind, because he was interacting with Plaintiff throughout the convention in his capacity as an employee of Defendant Harris Teeter, was engaged in a pursuit or undertaking that in some logical manner pertained to his employment with Defendant Harris Teeter.

311. As a direct and proximate result of Defendant Lind's wrongful conduct, Plaintiff suffered and continues to suffer significant damages, including without limitation physical injuries, severe emotional trauma, psychological distress, and related damages, including the onset of PTSD, loss of professional functioning, and ongoing therapy and medical costs.

312. Defendant Lind's battery was the proximate cause of Plaintiff's severe physical injuries resulting from the sexual assault, including a concussion and physical trauma consistent with non-consensual sexual contact.

313. Defendant Lind's battery was also the proximate cause of Plaintiff's subsequent psychological injuries resulting from the rape, including a clinical diagnosis of PTSD and TBI, which have required ongoing therapy and medical treatment.

314. Plaintiff's damages also include significant emotional distress, intrusive flashbacks, anxiety, insomnia, and cognitive impairments that have substantially limited her ability to work and engage in daily activities.

315. Defendant Lind's battery also resulted in Plaintiff's loss of professional functioning, as her trauma impaired her ability to perform her job duties effectively, leading to financial hardship.

316. Because Defendant Lind took the above-described actions within the scope of his employment with Defendant Harris Teeter, Defendant Harris Teeter is vicariously liable for Defendant Lind's actions.

**WHEREFORE**, Plaintiff, Robin Bodenhamer, respectfully requests that this Court enter judgment in her favor and against Defendants, Christopher Lind and Harris Teeter, LLC, for sexual battery, and award her all damages available under applicable law, including compensatory damages for physical, emotional, and psychological harm; punitive damages based on the outrageous, intentional nature of the misconduct; costs incurred in this action; all applicable interest as permitted by law; and such other and further relief as the Court deems just and proper.

## COUNT II - ASSAULT
**(Against Defendants Christoper Lind and Harris Teeter)**

317. Plaintiff reincorporates and realleges all allegations in paragraphs 1-196, 215-226, 293-295, 297, and 299 above as if fully set forth herein.

318.　At all relevant times, Plaintiff and Defendant Lind were present at the CFIC Convention in their professional capacities.

319.　Defendant Lind interacted with Plaintiff throughout the Convention within the scope of his employment with Defendant Harris Teeter and in furtherance of his duties to his employer.

320.　During the course of the Convention, Defendant Lind intentionally isolated Plaintiff, who was visibly impaired due to alcohol consumption, and led her into a secluded restroom area.

321.　While Plaintiff was in a physically helpless and impaired condition, and unable to consent or resist, Defendant Lind engaged in non-consensual sexual contact with her, including genital contact and penetration.

322.　Defendant Lind's conduct throughout the evening of the Convention placed Plaintiff in reasonable fear of bodily harm.

323.　Furthermore, Defendant Lind's conduct was of such a nature and made under such circumstances as to affect the mind of a person of ordinary reason and firmness, and so as to influence the conduct of such a person.

324.　Moreover, Defendant Lind exploited the context of a professional event to isolate Plaintiff and carry out an assault and sexual battery, thereby compounding her vulnerability and intensifying the coercive nature of the encounter.

325.     Defendant Lind took the above-described actions within the scope of his employment with Defendant Harris Teeter.

326.     Defendant Lind, because he was interacting with Plaintiff throughout the convention in his capacity as an employee of Defendant Harris Teeter, was engaged in a pursuit or undertaking that in some logical manner pertained to his employment with Defendant Harris Teeter.

327.     As a direct and proximate result of Defendant Lind's assault, Plaintiff suffered and continues to suffer significant damages, including without limitation physical injuries, severe emotional trauma, psychological distress, and related damages, including the onset of PTSD, loss of professional functioning, and ongoing therapy and medical costs.

328.     Defendant Lind's assault was the proximate cause of Plaintiff's severe physical injuries resulting from the sexual assault, including a concussion and physical trauma consistent with non-consensual sexual contact.

329.     Defendant Lind's assault was also the proximate cause of Plaintiff's subsequent psychological injuries resulting from the rape, including a clinical diagnosis of PTSD and TBI, which have required ongoing therapy and medical treatment.

330.     Plaintiff's damages include significant emotional distress, intrusive flashbacks, anxiety, insomnia, and cognitive impairments that have substantially limited her ability to work and engage in daily activities.

331. Defendant Lind's assault also resulted in Plaintiff's loss of professional functioning, as her trauma impaired her ability to perform her job duties effectively, leading to financial hardship.

332. Because Defendant Lind took the above-described actions within the scope of his employment with Defendant Harris Teeter, Defendant Harris Teeter is vicariously liable for Defendant Lind's actions.

**WHEREFORE**, Plaintiff, Robin Bodenhamer, respectfully requests that this Court enter judgment in her favor and against Defendants, Christopher Lind and Harris Teeter, LLC, for assault, and award her all damages available under applicable law, including compensatory damages for physical, emotional, and psychological harm; punitive damages based on the outrageous, intentional nature of the misconduct; costs incurred in this action; all applicable interest as permitted by law; and such other and further relief as the Court deems just and proper.

## COUNT III - FALSE IMPRISONMENT
### (Against Defendants Christoper Lind and Harris Teeter)

333. Plaintiff reincorporates and realleges all allegations in paragraphs 1-196, 215-226, 293-295, 297, and 299 above as if fully set forth herein.

334. At all relevant times, Plaintiff and Defendant Lind were present at the CFIC Convention in their professional capacities.

335.     Defendant Lind interacted with Plaintiff throughout the Convention within the scope of his employment with Defendant Harris Teeter and in furtherance of his duties to his employer.

336.     During the course of the Convention, Defendant Lind intentionally isolated Plaintiff, who was visibly impaired due to alcohol consumption, and led her into a secluded restroom area.

337.     Defendant Lind intentionally physically restrained the Plaintiff, including without limitation by dragging her against her will through the Hilton Myrtle Beach lobby, taking her into the women's restroom and holding her down while he raped her, and subsequently forcibly taking her to a fourth floor hotel room.

338.     While Plaintiff was in a physically helpless and impaired condition, and while she was prevented from escaping, Defendant Lind engaged in non-consensual sexual contact with her, including genital contact and penetration.

339.     Defendant Lind's physical restraint of the Plaintiff as described herein was unlawful, and in the course of his conduct he deprived the Plaintiff of her liberty without any justification.

340.     Moreover, Defendant Lind exploited the context of a professional event to isolate Plaintiff, falsely imprison her, and assault her, thereby compounding her vulnerability and intensifying the coercive nature of the encounter.

341.    Defendant Lind took the above-described actions within the scope of his employment with Defendant Harris Teeter.

342.    Defendant Lind, because he was interacting with Plaintiff throughout the convention in his capacity as an employee of Defendant Harris Teeter, was engaged in a pursuit or undertaking that in some logical manner pertained to his employment with Defendant Harris Teeter.

343.    As a direct and proximate result of Defendant Lind's wrongful conduct, Plaintiff suffered and continues to suffer significant damages, including without limitation physical injuries, severe emotional trauma, psychological distress, and related damages, including the onset of PTSD, loss of professional functioning, and ongoing therapy and medical costs.

344.    Because Defendant Lind took the above-described actions within the scope of his employment with Defendant Harris Teeter, Defendant Harris Teeter is vicariously liable for Defendant Lind's actions.

**WHEREFORE**, Plaintiff, Robin Bodenhamer, respectfully requests that this Court enter judgment in her favor and against Defendants, Christopher Lind and Harris Teeter, LLC, for false imprisonment, and award her all damages available under applicable law, including compensatory damages for physical, emotional, and psychological harm; punitive damages based on the outrageous, intentional nature of the misconduct; costs incurred in this action; all applicable interest as

permitted by law; and such other and further relief as the Court deems just and proper.

### COUNT IV - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Against Defendants Christoper Lind and Harris Teeter)

345.    Plaintiff reincorporates and realleges all allegations in paragraphs 1-196, 215-226, 293-295, 297, and 299 above as if fully set forth herein.

346.    At all times relevant, Defendant Lind owed Plaintiff a duty to refrain from engaging in extreme, outrageous, and harmful conduct.

347.    At all relevant times, Plaintiff and Defendant Lind were present at a hospitality event in their professional capacities.

348.    Defendant Lind interacted with Plaintiff throughout the CFIC Convention within the scope of his employment with Defendant Harris Teeter and in furtherance of his duties to his employer.

349.    Defendant Lind, while attending the CFIC Convention in his professional capacity, engaged in a pattern of sexually aggressive behavior toward Plaintiff, with whom he had been interacting pursuant to his employment with Defendant Harris Teeter, culminating in a forcible sexual assault while Plaintiff was visibly incapacitated and unable to consent or protect herself.

350.    Defendant Lind's conduct was intentional and reckless.

351. He knew or should have known that forcibly isolating, undressing, and engaging in unwanted and non-consensual sexual contact with a semi-conscious person would inflict extreme emotional trauma.

352. Defendant Lind intentionally inflicted severe emotional distress on Plaintiff and was certain that such distress would result from his conduct.

353. Defendant Lind's conduct was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and is to be regarded as atrocious and utterly intolerable in a civilized community.

354. Defendant Lind took the above-described actions within the scope of his employment with Defendant Harris Teeter.

355. Defendant Lind, because he was interacting with Plaintiff throughout the convention in his capacity as an employee of Defendant Harris Teeter, was engaged in a pursuit or undertaking that in some logical manner pertained to his employment with Defendant Harris Teeter.

356. As a direct and proximate result of Defendant Lind's conduct, Plaintiff suffered severe emotional distress, including but not limited to: post-traumatic stress disorder, anxiety, panic attacks, depression, and other psychological injuries requiring extensive therapy and medical treatment.

357. The emotional distress experienced by Plaintiff was genuine, severe, and of a nature that no reasonable person could be expected to endure.

358. Defendant Lind is liable to Plaintiff for compensatory damages, emotional distress damages, and punitive damages due to the willful and malicious nature of his conduct.

359. Because Defendant Lind took the above-described actions within the scope of his employment with Defendant Harris Teeter, Defendant Harris Teeter is vicariously liable for Defendant Lind's actions.

**WHEREFORE**, Plaintiff, Robin Bodenhamer respectfully requests that this Court enter judgment in her favor and against Defendants, Christopher Lind and Harris Teeter, LLC, for intentional infliction of emotional distress, and award her all damages available under applicable law, including compensatory damages for emotional pain, suffering, mental anguish, loss of enjoyment of life, medical and counseling expenses, and other non-economic losses; punitive damages based on the outrageous, intentional nature of the misconduct; costs incurred in this action; all applicable interest as permitted by law; and such other and further relief as the Court deems just and proper.

## COUNT V - NEGLIGENT SUPERVISION
### (Against Defendant Harris Teeter)

360. Plaintiff reincorporates and realleges all allegations in paragraphs 1-196, 215-230, 293-295, 297, and 299 above as if fully set forth herein.

361.    Defendant Harris Teeter's employee, Defendant Lind, intentionally harmed Plaintiff by raping her while both he and Plaintiff were in attendance at the CFIC Convention at the Hilton Myrtle Beach.

362.    Defendant Lind was present at the Hilton Myrtle Beach solely in his capacity as an employee of and in furtherance of his employment with Defendant Harris Teeter.

363.    Defendant Harris Teeter knew or should have known that it had the ability to control Defendant Lind and his actions while Defendant Lind was in attendance at the CFIC Convention.

364.    Defendant Harris Teeter knew or had reason to know of the necessity to and opportunity to exercise control over Defendant Lind and his actions while Defendant Lind attended the CFIC Convention.

365.    Defendant Harris Teeter knew or should have known that it was creating an undue risk of harm by failing to supervise Defendant Lind while he attended functions such as overnight conventions.

366.    As a direct and proximate result of Defendant Harris Teeter's failure to supervise Defendant Lind, Plaintiff was subjected to intentional harm at the hands of Defendant Lind.

367.    As a direct and proximate result of Defendant Harris Teeter's failure to supervise Defendant Lind, Defendant Lind committed the acts of assault and

sexual battery, false imprisonment, and intentional infliction of emotional distress as described herein.

368.    Defendant Harris Teeter is vicariously liable for these tortious acts as they were committed by Defendant Lind within the scope of his employment.

369.    As a direct and proximate result of Defendant Harris Teeter's failure to supervise Defendant Lind, culminating in Defendant Lind's subsequent commission of the tortious acts described herein, Plaintiff suffered significant damages, including without limitation physical injuries, severe emotional trauma, psychological distress, and related damages, including the onset of PTSD, loss of professional functioning, and ongoing therapy and medical costs.

370.    Defendant Harris Teeter's negligence was the proximate cause of Plaintiff's severe physical injuries resulting from the sexual assault, including a concussion and physical trauma consistent with non-consensual sexual contact.

371.    Defendant Harris Teeter's negligence was also the proximate cause of Plaintiff's subsequent psychological injuries resulting from the rape, including a clinical diagnosis of PTSD and TBI, which have required ongoing therapy and medical treatment.

372.    Plaintiff's damages also include significant emotional distress, intrusive flashbacks, anxiety, insomnia, and cognitive impairments that have substantially limited her ability to work and engage in daily activities.

373.    Defendant Harris Teeter's negligence also resulted in Plaintiff's loss of professional functioning, as her trauma impaired her ability to perform her job duties effectively, leading to financial hardship.

374.    The harms suffered by Plaintiff were reasonably foreseeable consequences of Defendant Harris Teeter's failure to exercise reasonable care in supervising its employee during a work-related event.

**WHEREFORE**, Plaintiff, Robin Bodenhamer respectfully requests that this Court enter judgment in her favor and against Defendant, Harris Teeter, LLC, for negligent supervision, and award her all damages available under applicable law, including all compensatory damages recoverable; punitive damages based on the outrageous, intentional nature of the misconduct; costs incurred in this action; all applicable interest as permitted by law; and such other and further relief as the Court deems just and proper.

## COUNT VI - NEGLIGENCE
### (Against Defendant Bay Food)

375.    Plaintiff reincorporates and realleges all allegations in paragraphs 1-182, 215-226, 231-237, 293-294, and 298-299 above as if fully set forth herein.

376.    Defendant Bay Food owed Plaintiff a duty of care to ensure her safety and protection during overnight work-related events, such as the 19th CFIC Convention, where she attended as an Account Executive within the scope of her employment and at the direction of Defendant Bay Food.

377.     Plaintiff was present at the Hilton Myrtle Beach solely in her capacity as an employee of and in furtherance of her employment with Defendant Bay Food.

378.     Defendant Bay Food knew or should have known that risks, including sexual assault, were reasonably foreseeable at industry events where it encouraged its sales representatives to engage in nighttime social activities including alcohol consumption.

379.     Defendant Bay Food was aware that such events, including the CFIC Convention held on July 16-17, 2023, at the Hilton Myrtle Beach, often involved interactions with clients, co-workers, and professional colleagues in informal settings, heightening the risk of inappropriate conduct.

380.     Defendant Bay Food breached its duty of care by sending Plaintiff to the CFIC Convention without contemplating, implementing, or enforcing any safety policies, procedures, or training to protect its employees from reasonably foreseeable harm.

381.     Defendant Bay Food failed to provide any guidelines or protocols to its employees, including Plaintiff, on how to safely navigate social interactions involving alcohol at work-related events.

382.     Defendant Bay Food neglected to coordinate with event organizers, such as the Hilton Myrtle Beach or the CFIC, or any of its clients whose

employees were also in attendance at the Convention, to ensure adequate security measures were in place to protect its employees during the convention.

383. Defendant Bay Food did not conduct any risk assessments or provide pre-event briefings to Plaintiff or other employees regarding potential safety issues associated with overnight conventions.

384. Defendant Bay Food also failed to train its supervisory staff to recognize and address risks associated with sending employees to alcohol-involved networking events.

385. As a direct result of Defendant Bay Food's negligence, Plaintiff was raped by Defendant Lind on July 17, 2023, in a public women's restroom at the Hilton Myrtle Beach, while both were in attendance at the CFIC Convention at the direction of and on behalf of their respective employers, Defendants Bay Food and Harris Teeter.

386. Defendant Bay Food's failure to implement safety measures allowed Defendant Lind to exploit the informal and alcohol-fueled environment of the Convention, leading to Plaintiff's sexual assault.

387. As a direct and proximate result of Defendant Bay Food's negligence, Plaintiff suffered and continues to suffer significant damages, including without limitation physical injuries, severe emotional trauma, psychological distress, and related damages, including the onset of PTSD, loss of professional functioning, and ongoing therapy and medical costs.

388.  Defendant Bay Food's negligence was the proximate cause of Plaintiff's severe physical injuries resulting from the sexual assault, including a concussion and physical trauma consistent with non-consensual sexual contact.

389.  Defendant Bay Food's breach was also the proximate cause of Plaintiff's subsequent psychological injuries resulting from the rape, including a clinical diagnosis of PTSD and TBI, which have required ongoing therapy and medical treatment.

390.  Plaintiff's damages also include significant emotional distress, intrusive flashbacks, anxiety, insomnia, and cognitive impairments that have substantially limited her ability to work and engage in daily activities.

391.  Defendant Bay Food's negligence also resulted in Plaintiff's loss of professional functioning, as her trauma impaired her ability to perform her job duties effectively, leading to financial hardship.

392.  The harms suffered by Plaintiff were reasonably foreseeable consequences of Defendant Bay Food's failure to exercise reasonable care in protecting its employee during a work-related event.

393.  Defendant Bay Food's reckless disregard for Plaintiff's safety, despite the known risks of such events, exacerbated the severity of her injuries and prolonged her recovery process.

**WHEREFORE**, Plaintiff, Robin Bodenhamer respectfully requests that this Court enter judgment in her favor and against Defendant, Bay Food Brokerage,

Inc., for negligence, and award her all damages available under applicable law, including all compensatory damages recoverable; punitive damages based on the outrageous, intentional nature of the misconduct; costs incurred in this action; all applicable interest as permitted by law; and such other and further relief as the Court deems just and proper.

## COUNT VII - NEGLIGENT PREMISES LIABILITY
### (Against Defendant EOS)

394.    Plaintiff reincorporates and realleges all allegations in paragraphs 1-128, 137-182, 197-214, 293-294, 296, and 299 above as if fully set forth herein.

395.    Defendant EOS is the operator and manager of the Hilton Myrtle Beach hotel and convention property located at 10000 Beach Club Drive, Myrtle Beach, South Carolina 29572.

396.    At all relevant times, Defendant EOS had control and responsibility for maintaining and managing the Hilton Myrtle Beach premises on which the 19th Annual CFIC Convention took place on or around July 16–17, 2023.

397.    Plaintiff Bodenhamer was a lawful business invitee and paying guest at the Hilton Myrtle Beach during the CFIC Convention, attending the event in her professional capacity as an employee of Defendant Bay Food Brokerage, Inc.

398.    On July 17, 2023, while on Hilton Myrtle Beach's premises, Plaintiff Bodenhamer was sexually assaulted and raped by Defendant Christopher Lind, a

fellow industry attendee, inside a publicly accessible women's restroom on the resort property.

399. Prior to the assault, Hilton Myrtle Beach staff observed multiple warning signs:

a. Plaintiff was visibly intoxicated, disoriented, and unable to walk without physical assistance;

b. Defendant Lind was seen openly groping Plaintiff at the outdoor bar and thereafter forcefully leading her through public areas of the resort, including the lobby;

c. Several high school and college-aged student witnesses informed Hilton Myrtle Beach staff multiple times of Plaintiff's concerning condition and of Defendant Lind's predatory conduct;

d. Hilton Myrtle Beach staff—including bartenders and the hotel's night auditor—observed Defendant Lind taking Plaintiff into a women's restroom while she was semi-conscious and unable to speak clearly;

e. Hilton Myrtle Beach staff personally observed Defendant Lind raping Plaintiff inside the women's restroom; and

f. Hilton Myrtle Beach staff stood outside of the women's restroom while the rape was occurring despite being aware of what was occurring inside the restroom.

400. Despite these red flags, Hilton Myrtle Beach staff failed to intervene at any point, failed to timely notify law enforcement or emergency medical personnel, and as a result allowed the rape to occur in a public space under their supervision.

401. Hilton Myrtle Beach staff stood idly outside the restroom while Defendant Lind emerged with Plaintiff—both partially undressed—without offering Plaintiff any assistance.

402. Defendant EOS is liable for the acts and omissions of its employees described herein.

403. Defendant EOS owed a duty of care to its guests and invitees to provide a reasonably safe and secure environment, including Plaintiff.

404. Defendant EOS breached that duty of care by failing to:

    a. Monitor and supervise its public areas with adequate security;

    b. Intervene upon receiving reports and witnessing signs of imminent harm;

    c. Implement policies or training to detect and respond to guest intoxication or suspected assaults; and

    d. Promptly notify law enforcement upon discovering the assault in progress.

405. Defendant EOS's breaches of its duty of care, as described without limitation above, were negligent.

406. Plaintiff's sexual assault and related trauma resulted directly from Defendant EOS's negligent acts.

407. Defendant EOS's negligence directly caused the dangerous situation that led to Plaintiff's harm, specifically the circumstances which allowed Defendant Lind to rape Plaintiff in the hotel's public women's restroom, as Defendant EOS failed to fulfill its duty to maintain safe premises for Plaintiff.

408. Defendant EOS owed Plaintiff a duty to take reasonable steps to protect her from foreseeable harm, including to intervene and/or prevent a sexual assault when actually aware of the imminent occurrence of such an assault.

409. Defendant EOS breached this duty through negligent acts and omissions, including its failure to intervene despite actual knowledge of Plaintiff's distressed and incapacitated state, implement or carry out any adequate security policies, or promptly notify law enforcement.

410. These breaches directly and proximately resulted in Plaintiff's sexual assault and severe physical, emotional, and psychological damages, including PTSD, traumatic brain injury, and ongoing medical expenses, all of which were foreseeable consequences of Defendant EOS's failure to exercise reasonable care.

411. Plaintiff's sexual assault and related trauma were the direct and foreseeable result of Defendant EOS's negligent failure to secure its premises and act upon obvious indicators of risk.

412. Defendant EOS is liable for failing to exercise reasonable care to protect Plaintiff from the foreseeable criminal acts of third parties on its premises.

413. But for Defendant EOS's negligence, Plaintiff would not have been raped by Defendant Lind in the resort's women's restroom.

414. As a direct and proximate result of Defendant EOS's negligence, Plaintiff suffered significant damages, including without limitation physical injuries, severe emotional trauma, psychological distress, and related damages, including the onset of PTSD, loss of professional functioning, and ongoing therapy and medical costs.

415. Defendant EOS's negligence was the proximate cause of Plaintiff's severe physical injuries resulting from the sexual assault, including a concussion and physical trauma consistent with non-consensual sexual contact.

416. Defendant EOS's negligence was also the proximate cause of Plaintiff's subsequent psychological injuries resulting from the rape, including a clinical diagnosis of PTSD and TBI, which have required ongoing therapy and medical treatment.

417. Plaintiff's damages also include significant emotional distress, intrusive flashbacks, anxiety, insomnia, and cognitive impairments that have substantially limited her ability to work and engage in daily activities.

418. Defendant EOS's negligence also resulted in Plaintiff's loss of professional functioning, as her trauma impaired her ability to perform her job duties effectively, leading to financial hardship.

419. The harms suffered by Plaintiff were reasonably foreseeable consequences of Defendant EOS's failure to exercise reasonable care in maintaining the premises of the hotel.

**WHEREFORE**, Plaintiff, Robin Bodenhamer, respectfully requests that this Court enter judgment in her favor and against Defendant, EOS Hospitality LLC, for negligence under a theory of premises liability, and award her all damages available under applicable law, including all compensatory damages recoverable; punitive damages based on the outrageous, intentional nature of the misconduct; costs incurred in this action; all applicable interest as permitted by law; and such other and further relief as the Court deems just and proper.

## COUNT VIII - NEGLIGENCE
### (Against Defendant EOS)

420. Plaintiff reincorporates and realleges all allegations in paragraphs 1-128, 137-182, 197-214, 293-294, 296, and 299 above as if fully set forth herein.

421. Defendant EOS is the operator and manager of the Hilton Myrtle Beach hotel and convention property located at 10000 Beach Club Drive, Myrtle Beach, South Carolina 29572.

422. At all relevant times, Defendant EOS had control and responsibility for managing and securing the Hilton Myrtle Beach where the 19th Annual CFIC Convention took place on or around July 16–17, 2023.

423. On July 17, 2023, while at the Hilton Myrtle Beach attending the CFIC Convention, Plaintiff Bodenhamer was sexually assaulted and raped by Defendant Christopher Lind, a fellow industry attendee, inside a publicly accessible women's restroom on the resort's property.

424. Prior to the assault, Hilton Myrtle Beach staff observed multiple warning signs:

   a. Plaintiff was visibly intoxicated, disoriented, and unable to walk without physical assistance;

   b. Defendant Lind was seen openly groping Plaintiff at the outdoor bar and thereafter forcefully leading her through public areas of the resort, including the lobby;

   c. Several high school and college-aged student witnesses informed Hilton Myrtle Beach staff multiple times of Plaintiff's concerning condition and of Defendant Lind's predatory conduct;

   d. Hilton Myrtle Beach staff—including bartenders and the hotel's night auditor—observed Defendant Lind taking Plaintiff into a women's restroom while she was semi-conscious and unable to speak clearly;

e. Hilton Myrtle Beach staff personally observed Defendant Lind raping Plaintiff inside the women's restroom; and

f. Hilton Myrtle Beach staff stood outside of the women's restroom while the rape was occurring despite being aware of what was occurring inside the restroom.

425.    Despite these red flags, Hilton Myrtle Beach staff failed to intervene at any point, failed to timely notify law enforcement or emergency medical personnel, and as a result allowed the rape to occur in a public space under their supervision.

426.    Hilton Myrtle Beach staff stood idly outside the restroom while Defendant Lind emerged with Plaintiff—both partially undressed—without offering Plaintiff any assistance.

427.    Defendant EOS is liable for the acts and omissions of its employees described herein.

428.    Defendant EOS owed a duty of care to its guests to provide a reasonably safe and secure environment, including Plaintiff.

429.    Defendant EOS breached that duty of care by failing to:

a. Monitor and supervise its public areas with adequate security;

b. Intervene upon receiving reports and witnessing signs of imminent harm;

c. Implement policies or training to detect and respond to guest intoxication or suspected assaults; and

d. Promptly notify law enforcement upon discovering the assault in progress.

430. Defendant EOS's breaches of its duty of care, as described without limitation above, were negligent.

431. Plaintiff's sexual assault and related trauma resulted directly from Defendant EOS's negligent acts.

432. Defendant EOS duty of care to Plaintiff included taking reasonable steps to protect her from foreseeable harm, such as by intervening and/or preventing sexual assault when actually aware of the imminent occurrence of such an assault.

433. Defendant EOS breached this duty through negligent acts and omissions, including its failure to intervene despite actual knowledge of Plaintiff's distressed and incapacitated state, implement or carry out any adequate security policies, or promptly notify law enforcement.

434. These breaches directly and proximately resulted in Plaintiff's sexual assault and severe physical, emotional, and psychological damages, including PTSD, traumatic brain injury, and ongoing medical expenses, all of which were foreseeable consequences of EOS's failure to exercise reasonable care.

435. Plaintiff's sexual assault and related trauma were the direct and foreseeable result of Defendant EOS's negligence and failure to act upon obvious indicators of risk.

436. Defendant EOS's negligence and failure to exercise reasonable care allowed Defendant Lind to rape Plaintiff in the public women's restroom.

437. But for Defendant EOS's negligence, Plaintiff would not have been raped by Defendant Lind in the resort's women's restroom.

438. As a direct and proximate result of Defendant EOS's negligence, Plaintiff suffered significant damages, including without limitation physical injuries, severe emotional trauma, psychological distress, and related damages, including the onset of PTSD, loss of professional functioning, and ongoing therapy and medical costs.

439. Defendant EOS's negligence was the proximate cause of Plaintiff's severe physical injuries resulting from the sexual assault, including a concussion and physical trauma consistent with non-consensual sexual contact.

440. Defendant EOS's negligence was also the proximate cause of Plaintiff's subsequent psychological injuries resulting from the rape, including a clinical diagnosis of PTSD and TBI, which have required ongoing therapy and medical treatment.

441. Plaintiff's damages also include significant emotional distress, intrusive flashbacks, anxiety, insomnia, and cognitive impairments that have substantially limited her ability to work and engage in daily activities.

442. Defendant EOS's negligence also resulted in Plaintiff's loss of professional functioning, as her trauma impaired her ability to perform her job duties effectively, leading to financial hardship.

443. The harms suffered by Plaintiff were reasonably foreseeable consequences of Defendant EOS's failure to exercise reasonable care.

**WHEREFORE**, Plaintiff, Robin Bodenhamer, respectfully requests that this Court enter judgment in her favor and against Defendant, EOS Hospitality LLC, for negligence, and award her all damages available under applicable law, including all compensatory damages recoverable; punitive damages based on the outrageous, intentional nature of the misconduct; costs incurred in this action; all applicable interest as permitted by law; and such other and further relief as the Court deems just and proper.

## COUNT IX - 42 U.S.C. § 12112
### Discrimination under the Americans with Disabilities Act / Failure to Accommodate
### (Against Defendant Bay Food)

444. Plaintiff reincorporates and realleges all allegations in paragraphs 1-182, 215-226, 231–294, and 298-299 above as if fully set forth herein.

445. This is a cause of action against Defendant Bay Food under the Americans with Disabilities Act of 1990 as amended (ADA), 42 U.S.C. §§ 12101 et seq. for its unlawful employment practices against Plaintiff based on her disability and protected activity.

446. At all times material hereto, Plaintiff requested reduced hours and reassignment from the Harris Teeter account to accommodate her disability.

447. Defendant Bay Food refused to provide reasonable accommodation.

448. Defendant Bay Food's unlawful conduct was knowing, malicious, willful, and wanton and/or showed a reckless disregard for Plaintiff's protected rights, which has caused and continues to cause Plaintiff to suffer substantial economic and non-economic damages.

449. Plaintiff is a former employee of Defendant Bay Food. Defendant Bay Food employed Plaintiff as an Account Executive from May 2022 to July 24, 2024.

450. At all relevant times, Plaintiff met the definition of an "employee" under all applicable statutes.

451. Since the rape on July 17, 2023, through the present, Plaintiff has been physically and mentally impaired due to her diagnosis of PTSD and TBI disabilities.

452. At all relevant times, Plaintiff's physical and mental conditions have substantially limited her major life activities, including but not limited to

thinking, concentration, sleeping, interacting with others, working, and managing emotional regulation.

453. Specifically, as a result of the sexual assault, Plaintiff has suffered persistent cognitive impairments, intrusive flashbacks, anxiety, insomnia, and heightened emotional distress, thereby significantly interfering with her ability to function in both professional and personal settings.

454. At all relevant times, Plaintiff was qualified as "disabled" pursuant to the ADA because she was actually impaired as described in 42 U.S.C. § 12102(1)(A).

455. Plaintiff requested reasonable accommodations. Specifically, Plaintiff requested reduced hours and to be removed from the Harris Teeter account to avoid exacerbating her condition.

456. At all relevant times, Plaintiff was qualified to perform the essential duties of the job with the requested reasonable accommodations.

457. Defendant Bay Food did not make a good faith effort to accommodate Plaintiff's disability.

458. All the accommodations that Plaintiff requested were reasonable.

459. None of the accommodations that Plaintiff requested would have created an undue hardship for Defendant Bay Food.

460. Defendant Bay Food failed to communicate with Plaintiff meaningfully and in good faith concerning her disability and requested accommodations.

461. Defendant Bay Food discriminated against Plaintiff in violation of the ADA by refusing to accommodate her disability.

462. Defendant Bay Food knowingly and intentionally discriminated against Plaintiff because of her disability.

463. Defendant Bay Food is liable for the acts and omissions of its agents and employees.

464. Plaintiff suffered injuries as a result of Defendant Bay Food's failure to reasonably accommodate her disability.

465. Defendant Bay Food's failure to accommodate Plaintiff's disability was the direct and proximate cause of Plaintiff's injuries, damages, and losses.

466. Defendant Bay Food acted with malice or reckless indifference to Plaintiff's federally protected rights under the ADA when it refused to provide a reasonable accommodation for her disability.

**WHEREFORE**, Plaintiff respectfully requests:

a. Compensatory damages for emotional distress, economic losses, medical expenses, and other harms;

b. Punitive damages to deter future violations;

c. Attorney's fees and costs pursuant to 42 U.S.C. § 12205;

d.   Costs incurred in this action;

e.   All applicable interest as permitted by law; and

f.   Such further relief as this Court deems just and equitable.

<u>COUNT X - 42 U.S.C. § 12203</u>
**Retaliation under the Americans with Disabilities Act
(Against Defendant Bay Food)**

467.   Plaintiff reincorporates and realleges all allegations in paragraphs 1-182, 215-226, 231–294, and 298-299 above as if fully set forth herein.

468.   Plaintiff engaged in protected activity when she asked Defendant Bay Food for reasonable accommodations for her disability.

469.   Specifically, Plaintiff requested reduced hours, and to be removed from the Harris Teeter account to avoid exacerbating her condition.

470.   Furthermore, Plaintiff requested workers' compensation relating to the rape and sexual assault.

471.   Plaintiff engaged in protected activity when she opposed Defendant Bay Food's refusal to accommodate her disability and its retaliation against her for her protected activity.

472.   As a direct result of Plaintiff's request for a reasonable accommodation and opposition to conduct prohibited by the ADA, Defendant Bay Food retaliated against Plaintiff by:

a.   Denying Plaintiff's request workers' compensation;

b. Refusing to remove Plaintiff from the Harris Teeter account to avoid exacerbating her condition; and

c. Terminating Plaintiff's employment.

473. Defendant Bay Food treated Plaintiff less favorably than her similarly situated counterparts who did not engage in protected activity.

474. Defendant Bay Food intimidated and/or interfered with Plaintiff in the exercise and enjoyment of her rights under the ADA by:

a. Denying Plaintiff's request for workers' compensation;

b. Refusing to remove Plaintiff from the Harris Teeter account; and

c. Terminating Plaintiff's employment.

475. After Plaintiff requested workers' compensation for medical treatment and therapy related to her PTSD, which arose from the work-related incident, Defendant Bay Food terminated her employment.

476. This termination constitutes retaliation for engaging in protected activities, including requesting accommodations and workers' compensation, under 42 U.S.C. § 12203(a).

477. Defendant Bay Food is liable for the acts and omissions of its agents and employees.

478. Defendant Bay Food, either directly or by and through its agents, retaliated against Plaintiff and caused her injuries, damages, and losses.

479. Defendant Bay Food's retaliatory conduct was the direct and proximate cause of Plaintiff's injuries, damages, and losses.

480. Defendant Bay Food's conduct was with malice or reckless indifference to Plaintiff's federally protected rights under the ADA.

**WHEREFORE**, Plaintiff respectfully requests:

    a. Compensatory damages for emotional distress, economic losses, and other harms;

    b. Punitive damages to deter future violations;

    c. Attorney's fees and costs;

    d. Costs incurred in this action;

    e. All applicable interest as permitted by law; and

    f. Such further relief as this Court deems just and equitable.

**COUNT XI - Fla. Stat. §§ 760.01-760.22**
**Florida Civil Rights Act (Florida CRA)**
**(Against Defendant Bay Food)**

481. Plaintiff reincorporates and realleges all allegations in paragraphs 1-182, 215-226, 231–294, and 298-299 above as if fully set forth herein.

482. The Florida Civil Rights Act protects individuals with handicaps. Fla. Stat. § 760.10.

483. FCRA does not define "handicap." However, courts have applied the Fair Housing Act's (FHA) definition of "handicap" to the FCRA. *Greene v. Seminole Elec. Coop.*, 701 So. 2d 646, 647 (Fla. Dist. Ct. App. 5th Dist. 1997). By that

definition, handicap refers to a person having "a physical or mental impairment which substantially limits one or more major life activities, or. . . a record of having, or [being] regarded as having, such physical or mental impairment." Fla. Stat. § 760.22(7).

484. FCRA prohibits discrimination against any individual on the basis of her handicap in regard to hiring, discharge, compensation, and terms, conditions, or privileges of employment.

485. FCRA prohibits retaliation against an employee for opposing discriminatory practices, making a charge, or participating in a proceeding. Fla. Stat. § 760.10(7).

486. Employers must make reasonable accommodations that allow otherwise qualified disabled individuals to perform the essential functions of their jobs, unless the accommodations would cause undue hardship to the employer. *Dickey v. Dollar Gen. Corp.*, 351 Fed. Appx. 389, 391-392 (11th Cir. 2009).

487. The FCRA is construed in conformity with the federal ADA and related regulations. *St. Johns County Sch. Dist. v. O'Brien*, 973 So. 2d 535, 540 (Fla. Dist. Ct. App. 5th Dist. 2007).

488. Plaintiff is an individual with a handicap, Traumatic Brain Injury (TBI) and post-traumatic stress disorder (PTSD), under Fla. Stat. § 760.10(1)(a), as her condition substantially limits one or more major life activities, including but not limited to working, concentrating, and sleeping.

489. Defendant Bay Food is an employer subject to the FCRA, as it employs more than 15 employees and operates in Florida. Fla. Stat. § 760.02(7)

490. On July 17, 2023, Plaintiff was raped by Defendant Lind, an employee of Defendant Harris Teeter, a business with which Defendant Bay Food regularly conducts transactions, during a work-related food conference in South Carolina.

491. As a result, Plaintiff was diagnosed with PTSD, which significantly impairs her ability to perform job duties involving Defendant Harris Teeter due to trauma triggers.

492. Plaintiff notified Defendant Bay Food of her PTSD diagnosis and requested a reasonable accommodation, specifically reduced hours and reassignment to an account other than Defendant Harris Teeter, to avoid exacerbating her condition.

493. Defendant Bay Food initially denied Plaintiff's request and required her to continue working on the Harris Teeter account, despite knowing this would trigger her PTSD symptoms.

494. This refusal constitutes a failure to provide a reasonable accommodation in violation of Fla. Stat. § 760.10(8).

495. Defendant Bay Food's failure to promptly reassign Plaintiff discriminated against her on the basis of her handicap, adversely affecting the terms, conditions, and privileges of her employment in violation of Fla. Stat. § 760.10(1)(a).

496. Defendant Bay Food later reassigned Plaintiff but subjected her to surveillance via computer software, further discriminating against her by creating a hostile work environment and retaliating for her accommodation request.

497. After Plaintiff requested workers' compensation for medical treatment and therapy related to her PTSD, which arose from the work-related incident, Defendant Bay Food terminated her employment.

498. This termination constitutes retaliation for engaging in a protected activity, requesting accommodations and workers' compensation.

499. As a direct and proximate result of Defendant Bay Food's actions, Plaintiff has suffered and continues to suffer emotional distress, exacerbation of her PTSD symptoms, economic losses, and other damages.

**WHEREFORE**, Plaintiff respectfully requests:

    a. Compensatory damages for emotional distress, economic losses, and medical expenses;

    b. Punitive damages to deter future violations;

    c. Attorney's fees and costs pursuant to Fla. Stat. § 760.11;

    d. Costs incurred in this action;

    e. All applicable interest as permitted by law; and

    f. Such further relief as this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff, Robin Bodenhamer, demands a trial by jury on all issues so triable.

Dated: <u>October 3, 2025.</u>

Respectfully submitted,

<u>/s/ Joseph F. Southron</u>
Joseph F. Southron, Esq.
Florida Bar No. 122109
**SOUTHRON FIRM, P.A.**
400 N. Ashley Drive, Suite 1720
Tampa, Florida 33602
Telephone: (813) 773-5105
Fax: (813) 773-5103
E-Mail: joe@southronfirm.com
Secondary E-Mail:
eservice@southronfirm.com
*Attorney for Plaintiff Bodenhamer*